UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAYAN CABRERA PEREZ, *et al.*, | Case No. C25-2542-RSM |
| Petitioners, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |
| v. | |
| LAURA HERMOSILLO, *et al.*, | |
| Respondents. | |

## I.    INTRODUCTION

This matter comes before the Court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of Petitioners Dayan Cabrera Perez, Gabriela Camacho Moreno, Melissa Merizema, Flor de Maria Mendez Jovel, Arun, Shuke Hirey, Daljeet Kaur, Marialissa Lopez Ramirez, and Noe Siquina Riscajche.  Dkt. #1.[1]  The Court has reviewed the petition, the Response filed by the Government, Dkt. #18, Petitioners' Traverse/Reply, Dkt. #21, and the remainder of the record.  For the following reasons, the Court will grant the habeas petition.

---

[1] On January 6, 2025, Petitioner Jhon Segura Mendoza accepted voluntary departure and agreed to his dismissal without prejudice from the petition.  *See* Dkts. #23, #24.

## II.    BACKGROUND

Unless otherwise noted, the following facts are taken from the verified petition, Dkt. #1. All Petitioners in this case are currently being detained at Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, did not receive any written notice or otherwise for their re-detentions, and did not have hearings before neutral decisionmakers to determine if re-detention was justified.

### A.  Petitioner Dayan Cabrera Perez

Mr. Cabrera is a citizen of Cuba.  After fleeing political persecution and entering the United States around March 20, 2022, he was apprehended by immigrations officials and released on his own recognizance with a Notice to Appear on April 4, 2022.  He then moved to Miami, Florida, continued to follow the requirements of his immigration process, including attending hearing and check-ins, filed his asylum application in February 2023, and obtained a work permit.

On May 27, 2025, Mr. Cabrera attended his final immigration court hearing in Miami, where the immigration judge dismissed his case, despite his pending asylum application.  ICE officers immediately arrested him outside the court room, and he was eventually transferred to NWIPC.  On June 2, 2025, Mr. Cabrera appealed the immigration judge's removal order, and his appeal before the Board of Immigration Appeals ("BIA") remains pending.

On June 23, 2025, Mr. Cabrera filed a motion for a bond hearing, and a Tacoma immigration judge found that it did not have jurisdiction due to Mr. Cabrera's "mandatory detention" but, in the alternative, ordered that he be released under a $2,000 bond.  Dkt. #19 at ¶¶ 14-15.

### B.  Petitioner Gabriela Camacho Moreno

Ms. Camacho is a citizen of Mexico.  She entered the United States around January 20, 2024, with her son to seek asylum.  After presenting herself for inspection, she was released on

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 2

her own recognizance with a Notice to Appear and instruction to report to the Spokane, Washington ICE office.

Ms. Camacho and her son moved in with her former sister-in-law in Spokane and reported to the ICE office, where officers installed an application on her son's phone in order to send check-in photos on behalf of them both, and they were told to report in-person every three months.

In March 2024, Ms. Camacho received notice via mail of her immigration court date changing from August 2024 to January 2027. Ms. Camacho and her son moved into an apartment around September or October 2024, and her son notified ICE of this address change at their next appointment. She submitted their asylum application in January 2025, received a work permit, and continued as planned while awaiting her January 4, 2027, hearing.

After some confusion around the location of their papers indicating their next in-person check-in, Ms. Camacho and her son went to the ICE office around September 22, 2025. Their missed appointment was September 4, 2025. *See* Dkt. #19 at ¶ 29. There, the ICE officer informed them that this would count for their required September check-in and gave them their next check-in date of March 12, 2026.

Following this September meeting, her son received a message setting an ICE check-in for October 14, 2025, and they attended their appointment on that date. At this check-in, their usual ICE officer informed them, per his superiors' orders, that they were being taken to Tacoma "for a document verification," but that they would leave the detention center within 72 hours. Upon arrival at NWIPC, Ms. Camacho and her son were detained but not told any reason for the re-detention. While Ms. Camacho remains in detainment at NWIPC, her son has since been transferred to another facility and deported. Her master calendar hearing is set for January 21, 2026.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 3

### C. Petitioner Melissa Merizema

Ms. Merizema, a Haitian citizen, fled Haiti and entered the United States on February 10, 2024.  Following her Customs and Border Patrol ("CBP") One appointment, she was paroled on February 11, 2024, issued a Form I-94, and served with a Notice to Appear.  She then moved to live with her brother, a United States Citizen, and his wife and child in Richland, Washington, where she continued with her check-ins and appointments.

After applying for asylum and temporary protected status, Ms. Merizema received employment authorization and obtained medical insurance.  She established care with a local women's health clinic due to her ongoing severe abdominal and pelvic pain, and she was eventually diagnosed with pelvic congestion syndrome.[2]

On July 16, 2025, Ms. Merizema was ordered to report to the Richland ICE office on July 31, 2025.  She presented herself on that date, where ICE officers detained her.  She was not given any reason for this arrest.  She tried to inform the arresting officers of her ongoing medical issues and medications, but the officers told her to seek care once she was at NWIPC.

Ms. Merizema states that she has "been treated very badly at the NWIPC by the medical staff, through neglect."  Dkt. #7 at ¶ 10.  She has "repeatedly requested" to see a specialist for her pain and has gone to the hospital twice with no ability to follow up on treatment.  *Id*.  She says she is "in terrible pain on a daily basis."  *Id*.  She requested a wheelchair from NWIPC staff but was refused one and ultimately given a cane by a fellow detainee to help her walk.  *Id*.

Ms. Merizema's case was transferred to the Tacoma Immigration Court.  On November 10, 2025, Ms. Merizema filed a Bond Redetermination Request, which a Tacoma immigration

---

[2] *See* https://my.clevelandclinic.org/health/diseases/24213-pelvic-congetsion-sydrome.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 4

judge denied for "no jurisdiction" due to mandatory detention on November 17, 2025.  Dkt. #19 at ¶¶ 40-41.

On November 25, 2025, she states that the immigration judge found her request for asylum "credible, [but] he refused to consider that I had been re-detained without any explanation given, and that I had been suffering form untreated medical conditions while detained."  Dkt. #7 at ¶ 12.  Ultimately, the immigration judge dismissed her case and ordered her removed.  Ms. Merizema states that she is appealing this decision.

**D.  Petitioner Flor de Maria Mendez Jovel**

Ms. Mendez, a Guatemalan citizen, fled Guatemala due to political persecution and entered the United States around December 21, 2023.  After a Credible Fear Interview, she was issued a Notice to Appear for her first hearing in July 2027.  She moved to Oregon and checked-in with ICE via photos through the phone application every eight days.  She missed a check-in phone call once due to being at work, but she immediately called her assigned officer back and resumed as normal, otherwise complying with all requirements.  She applied for asylum in December 2024, received her work permit in June 2025, and says she has thrived in her community amongst numerous aunts, uncles, and cousins in Oregon.

On October 31, 2025, Ms. Mendez was the passenger in a car stopped by three unmarked ICE vehicles.  She presented her work permit, but the ICE agents claimed she missed a phone check-in and needed to speak to her assigned ICE officer.  The Government states that "she had three missed biometric check-ins in 2025 and one missed office visit on July 28, 2025[.]"  Dkt. #19 at ¶ 53.  Ms. Mendez attempted to explain that she had already called her assigned officer back and resumed normal check-ins after the missed call, but the ICE officers said she needed to speak with her assigned officer to be considered for release.  Despite this reasoning for her

detainment, she was taken to NWIPC and has never been given the opportunity to speak with her assigned officer.

On December 23, 2025, an immigration judge dismissed Ms. Menez's case and ordered her removed to Guatemala. *See* Dkt. #18 at 4. She has an individual calendar hearing on January 9, 2026. *Id*.

**E. Petitioner Arun**

Mr. Arun, a citizen of India, fled political persecution and entered the United States on May 27, 2024. After a brief detainment, he was released on his own recognizance, issued a Notice to Appear in the Santa Ana Immigration Court in November 2024, and instructed to schedule an appointment with his local ICE office within sixty days. Mr. Arun moved to be closer to family in Vancouver, Washington, notified the Santa Ana Immigration Court of his new address, and received a new court date of November 16, 2026, in Seattle Immigration Court.

In July 2024, Mr. Arun went to his local ICE office in Portland, Oregon but was told he needed to go to the Ontario, California ICE office. He then traveled to the Ontario office, where he was told to report to the Portland office. He returned to the Portland ICE office, had his initial appointment on August 15, 2024, and began submitting weekly photo check-ins. He filed his asylum application in October 2024 and later received his work authorization.

On November 7, 2025, Mr. Arun was re-detained at his apartment. ICE officials appeared at his door, showed him a photo of himself, and asked him to step outside. They then placed him in handcuffs but gave no reason for the arrest. Mr. Arun was then taken to NWIPC. His next immigration hearing is January 15, 2026. *See* Dkt. #18 at 4.

**F. Petitioner Shuke Hirey**

Mr. Hirey, a Somalian citizen, fled Somalia due to threats of death and other harm and entered the United States on April 30, 2024. After approximately a month in custody, he was

released following a positive Credible Fear Interview and moved to Washington state. Every Friday, he received an alert on his phone to check-in via photo. In November 2025, he went to the Intensive Supervision Appearance Program ("ISAP") office to fix a technical issue with the phone application. He complied with all requirements and worked as a restaurant cook in Tukwila, Washington. However, the Government alleges that Mr. Hirey "missed 29 Biometric Check-ins, the first missed check-in on August 16, 2024, and the last on November 28, 2025." Dkt. #19 at ¶ 79.

On December 5, 2025, Mr. Hirey attended his master calendar hearing in the Seattle Immigration Court, filed his asylum application, and received an individual hearing date for April 20, 2029. After the hearing, he presented himself for an appointment at the ISAP office in Tukwila, Washington, where he realized he had received his Friday check-in notification while his phone was on silent. He promptly submitted his required photo check-in while at the ISAP office. However, the immigration officers then informed him that he was being re-detained for late check-in submission. He was re-arrested at the Tukwila ISAP office and eventually sent to NWIPC. His next immigration hearing was scheduled for January 5, 2026. *See* Dkt. #18 at 4.

### G. Petitioner Daljeet Kaur

Ms. Kaur, a citizen of India, fled political persecution and entered the United States around January 23, 2022. After being apprehended shortly after crossing the border, she was released with a Notice to Appear. She then moved to California to live with her husband, brother, sister-in-law, and brother's child. She filed her asylum application, attended court hearings, received her work permit, and found employment at a gas station in Modesto, California.

Due to confusion on checking in for her first ICE appointment, Ms. Kaur missed her initial appointment, but she received help from her attorney in going to her local ICE office to

receive a new appointment date.  She continued in-person check-ins until November 2024, then she was told to submit photo check-ins via her phone instead.

After receiving her first alert to submit a photo, she submitted her photo and contacted her assigned officer to make sure the check-in worked, and she was assured that it was "perfectly fine."  Dkt. #11 at ¶ 5.  She notified ICE of her address change in February 2025, which was approved, and continued with photo check-ins through September 2025.  Ms. Kaur would upload multiple photos each time and contact her assigned officer any time she experienced issues with the check-in app, and she never received any notices or warnings of non-compliance.  However, the Government alleges that "she checked in outside her designated zone three times in 2024 and one time in 2025 and missed a self-report check-in on November 28, 2024."  Dkt. #19 at ¶ 86.

On September 24, 2025, at 5:00pm, Ms. Kaur received a call from an ICE officer and was instructed to report to the Stockton ICE office at 8:00am the following day.  When she presented herself the next morning, she was informed that she was being re-detained for violating her photo check-in requirements and was taken to NWIPC.  Her case was transferred to the Tacoma Immigration Court, where her applications for relief were denied on September 25, 2025, and she has appealed that decision.  *See* Dkt. #18 at 5.

After filing a Bond Redetermination Request, a Tacoma immigration judge denied her bond after finding no jurisdiction due to mandatory detention on November 19, 2025.  *See* Dkt. #19 at ¶¶ 87-88.

**H.  Petitioner Marialissa Lopez Ramirez**

Ms. Lopez, a Columbian citizen, escaped forced sex work in her home county and entered the United States around November 18, 2024.  After presenting herself at the border, she was released with an ankle monitor after ten days in custody.  She then moved to Newark, New Jersey to live with her aunt and presented herself for ISAP check-ins and appointments.

In mid January 2025, she appeared for a check-in appointment, her ankle monitor was removed, and she requested permission to move to Washington state after enrolling in the ISAP phone check-in application. Her request was approved, and she moved to Washington on January 25, 2025, and continued with phone check-ins.

On January 28, 2025, she presented herself at her local ICE office in Tukwila, Washington, where she was informed that she was being re-detained. She was only told that she had a deportation order before being sent to NWIPC.

Since her detainment, Ms. Lopez passed a Credible Fear Interview, obtained representation, and has a pending appeal for her immigration case. She also was approved for Special Immigrant Juvenile classification[3] and is applying for a deferred action based on this classification.

At NWIPC, she requested medical care due to vaginal-area pain, waited four months to be seen by a gynecologist, but has yet to receive any exam results.

**I.    Petitioner Noe Siquina Riscajche**

Mr. Siquina, a citizen of Guatemala, fled his home country due to death threats and entered the United States around January 18, 2024. He was apprehended by immigration officials, detained for one night, then released on his own recognizance with a Notice to Appear. Mr. Siquina then reunited with family members in Oregon and proceeded to report in-person to the Portland ICE office on April 12, 2024, May 23, October 14, and November 12, 2025. At his November appointment, he was instructed to next report in on July 13, 2026. During this time, he submitted his asylum application and lived amongst family members, including his wife, their child, and his brother-in-law (a U.S. lawful permanent resident).

---

[3] *See* Special Immigrant Juvenile classification requirements: https://www.uscis.gov/working-in-US/eb4/SIJ.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 9

On November 22, 2025, Mr. Siquina was the passenger in a car stopped by ICE officers on the interstate. He provided the officers with a letter from his attorney that explained his status and pending asylum application. The officer refused his request to call his attorney and re-detained him, and he was sent to NWIPC. His wife's and child's asylum applications remain separately pending before the Portland Immigration Court. His next immigration hearing was scheduled for December 30, 2025. *See* Dkt. #18 at 5.

### III.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that Mathews' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The parties both discuss how the application of the *Mathews* text applies here, and the Court will consider each *Mathews* factor in turn to determine whether Petitioners' arrests and detentions comport with constitutional due process requirements. In so doing, the Court is mirroring the application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, No. 25-1192-KKE, -- F. Supp. 3d --, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025). The Government "acknowledge[s]" the holding in *E.A. T.-B.* and similar cases from this district but "[r]espectfully" disagrees with these holdings, arguing that "these decisions erroneously conflate" statutory requirements. Dkt. #18 at 8-9.

Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioners were arrested, detained for weeks or months, and remain in custody undoubtedly deprives them of an established interest in their liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioners that the risk of erroneous deprivation of their liberty interest in the absence of a pre-detention hearing is high under the facts of this case.

1    In the final *Mathews* factor, the Court considers the Government's interest in arresting

2  and detaining Petitioner without a hearing.  The Government clearly has an interest in detaining

3  removable non-citizens under certain circumstances to the extent needed to ensure that they do

4  not abscond or commit crimes.  But where Petitioners have been living for years in United States

5  with permission of our immigration courts, following all the rules and waiting for hearings, and

6  there are no changes in their particular factual circumstances prior to their arrests, the

7  Government fails this factor.  There is no evidence on the record that any Petitioner is a flight

8  risk or danger to the community.  The Court finds that the Government's interest here is low.

9  *See also E.A. T.-B.*, *supra*.

10    Based on this review of the *Mathews* factors, the Court finds that Petitioners have a

11  protected liberty interest in continued release from custody and that due process requires that

12  Petitioners receive hearings before an immigration judge before they can be re-detained.

### IV.    CONCLUSION

14    Having reviewed the instant Motion and the remainder of the record, the Court hereby

15  finds and ORDERS that Petitioners' habeas petition, Dkt. #1, is GRANTED.  The Court

16  ORDERS that Petitioners shall be released from custody immediately and may not be re-detained

17  until after an immigration court hearing is held (with adequate notice) to determine whether

18  detention is appropriate.

19    DATED this 14th day of January, 2026.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 12